G. S. LANNOM, JR., TRUSTEE, *et al. v.* THE BOARD OF MAYOR
AND ALDERMEN OF THE TOWN OF TULLAHOMA.*

(*Nashville.*   December Term, 1926.)

Opinion filed, January 29, 1927.

1. **DEED. Estate on condition, subsequent. Reversion.**

A qualification or restriction may be made the part of a conveyance
by which, upon the nonperformance of some act by the vendee, an
estate is defeated, and title shall revert to, and reinvest in the
vendor. (Post, p. 27.)

2. **SAME. Same. Destruction by fire. Contract to restore.**

A stipulation made a part of a conveyance, that fire insurance in
a sum of not less than a fourth or a fifth of the probable value of
a building thereon, shall be maintained; and in the event of loss,
such indemnity shall be used "for the repair, replacement, or re-
building;" it is not essential to the consummation of such purpose
that the building should be restored in its every detail, especial-
ly where the vendee elected to procure insurance in the minimum
sum permitted by the deed, and the fact that no larger policy was
procured is the result of his own election. (Post, p. 31.)

3. **EQUITY. Maxim. "Where one of two persons must suffer loss,
he should suffer whose act or neglect occasioned the loss."**

As where the proceeds of an insurance policy are reduced material-
ly (compromise) from the face value, as the result of the negli-
gence and oversight of the trustee in bankruptcy to notify the
insurer of the change in the status of the title to the property
resulting from the bankrupt proceedings. (Post, p. 32.)

4. **INSURANCE. Fire. Loss clause. Assignment.**

A loss clause attached to a personal contract of insurance between
the insurer and insured, upon improved realty, providing for pay-

---

*On general rules of construction of deed designed to effectuate in-
tention, see 8 R. C. L., 1037; 3 R. C. L. Supp., 709; 4 R. C. L., 587.

ment to another in event of loss as interest may appear, amounts to an assignment of such policy, to secure the performance of a contract by deed, requiring such insurance. (Post, p. 29.)

Citing: Donaldson v. Insurance Co., 95 Tenn., 270-283-4.

---

*Headnotes 1. Fire Insurance, 26 C. J., section 156; 2. Bankruptcy, 7 C. J., section 397 (Anno); 3. Deeds, 18 C. J., section 198; 4. Deeds, 18 C. J., section 380; Replace, 34 Cyc., p. 1341 (Anno); 5. Bankruptcy, 7 C. J., section 204.

---

## FROM COFFEE.

---

Appeal from the Chancery Court of Coffee County to Court of Appeals, and by Certiorari to Supreme Court. —HON. T. L. STEWART, Judge.

B. F. PATY and BASS, BERRY & SIMS, for Lannom, Jr. et al.

CAMPBELL & DAVIDSON, for Town of Tullahoma.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The appellants, G. S. Lannom, Jr., trustee and others, as trustees in bankruptcy of W. L. Clarke, filed the bill in this cause to recover from the town of Tullahoma the proceeds of a policy of fire insurance procured by Clarke on a building of which he had title, the policy containing a clause providing for its payment to the town of Tullahoma, as its interests might appear.

The Chancellor dismissed the bill and his decree was affirmed by the Court of Appeals. The trustees presented their petition for *certiorari* to this court, which

was granted at a former term, and the cause has been argued orally at the bar of this court.

The building insured was located on property owned by the town of Tullahoma as the *situs* of a school. This property was first leased and then conveyed to Fitzgerald and Clarke, without monetary consideration, the deed containing a clause that the property should be used by the vendees for school purposes, and that if it should cease to be used for school purposes, the title should revert to and reinvest in the Board of Mayor and Aldermen of the town of Tullahoma. The deed also contained the following provision:

"It is further stipulated, agreed and made a part of this conveyance that the said W. S. Fitzgerald and W. L. Clarke, their successors and assigns, shall keep the main building of said property insured in some solvent insurance company or companies, against damage or destruction by fire or windstorm in the sum of not less than $15,000, and in the event the said building shall be damaged or destroyed by fire, or windstorms, in that event all sums of insurance paid on account of such damage or destruction shall be used for the repair, replacement or rebuilding of said building, so damaged or destroyed. It is further stipulated and agreed and made a part of this conveyance that if the said Fitzgerald and Clarke or their successors or assigns shall fail or refuse to so keep said building insured and pay the premiums therefor that such failure or refusal may be treated by the Board of Mayor and Aldermen as a failure to use said property for school purposes, in which event the title to said property shall revert to said Board of Mayor and Aldermen."

Fitzgerald conveyed his interest in this property to his partner, W. L. Clark, and Clarke was subsequently

adjudicated a bankrupt. Prior to the bankruptcy the building described in the foregoing clause was insured in the sum of $15,000 with a clause in the policy providing that it should be payable to the town of Tullahoma, as its interest might appear. The building was destroyed by fire after Clarke was adjudicated a bankrupt, and payment of the policy was refused by the insurer on the ground that the bankruptcy of Clarke had brought about a change in the title to the property, which rendered the policy void, under certain of its provisions. The town of Tullahoma effected a compromise with the insurer and collected two-thirds of the face value of the policy, $10,000, out of which it paid $1500 to its attorneys who brought about the compromise.

The answer filed by the town of Tullahoma to the original bill asserts that the town is holding the net proceeds of the policy, $8500 as a trust fund, to be expended in accord with the clause of the deed hereinabove quoted.

Shortly after the property was conveyed to Fitzgerald and Clarke they conveyed it in trust to secure the payment of borrowed money. This deed of trust was foreclosed after the bankruptcy, and after the town of Tullahoma had collected the compromise settlement of the insurance, and the title to the property is now in Mrs. Goldie Bear, the purchaser under the foreclosure, subject to the limitation in the deed to Fitzgerald and Clarke with regard to the use to which the property may be put.

The contention of the trustees in bankruptcy is that the contract of insurance was a personal contract between Clarke and the insurer, and that the proceeds of the insurance are personal property; that the amount realized is wholly insufficient to rebuild or replace the building insured, and that, therefore, the terms of the contract or

trust, under which the town of Tullahoma is holding the proceeds, have become impossible of performance, with the result that it is the duty of the town of Tullahoma as trustee, to turn the money over to Clarke's trustees in bankruptcy, for the benefit of his creditors.

We may concede the contention of the trustees that the contract of insurance was a personal contract between the insurer and Clarke, as the insured; and the authorities seem to be that the clause attached to the policy providing for its payment to the town of Tullahoma, as its interest might appear, amounts to an assignment of the policy to the town of Tullahoma, to secure it in the performance of the contract between it and its vendees, as evidenced by the clause hereinabove quoted from the deed. *Donaldson* v. *Insurance Co.,* 95 Tenn., 270, 283-284.

It will be noted that the contract, as set out in the deed, did not require the vendees to have the insurance policy made payable to the town of Tullahoma; and the insertion of this clause was either voluntary on the part of the vendees; or was the result of a subsequent agreement between them and the town.

The merits of the contention made by the trustees in bankruptcy must be considered, so far as the town of Tullahoma is concerned, as if these contentions were being urged by Clarke himself. His trustees are subject to any defense which the town might have urged against Clarke.

The purpose of the insurance clause in the deed to Fitzgerald and Clarke was to secure the town of Tullahoma in its desire and purpose that the property on which the insured building was located should be maintained and used for school purposes. It clearly was not necessary or essential to the consummation of this purpose

that the main building should be restored in its every detail, in the event of its destruction by fire. The terms employed in the deed should be construed so as to effectuate this fundamental purpose rather than to destroy it.

The insurance clause of the deed did not obligate the vendees to insure the building for only $15,000. The language is that the building should be insured "in the sum of not less than $15,000." The vendees elected to procure a policy in the minimum sum permitted by their deed, and the fact that no larger policy was procured is the result of their own election.

Furthermore, it appears from the record that the proceeds of the insurance were reduced from the face value of the policy to the net sum of $8500, as the result of the neglect and oversight of the trustees in bankruptcy to notify the insurer of the change in the *status* of the title to the property resulting from the bankruptcy proceedings. In other words, but for the default of the trustees themselves, the funds available for the rebuilding or replacement of the destroyed building would be $15,000 instead of $8500.

The building in question appears to have been a very large and rambling building, of brick construction. It had a front of 114 feet and a depth of 245 feet, with a foundation of stone. A considerable portion of the first and second floors was occupied by an auditorium, seating seven hundred people. There were eight class rooms on the first floor and nine on the second floor. Prior to the fire the third floor was used as a dormitory, with twenty-three bedrooms. The proof offered by the trustees in bankruptcy, as set out in their brief, makes it appear that it would cost a sum between $50,000 and $100,000 to restore the building in its original condition.

The language of the deed to Fitzgerald and Clarke is that the proceeds of the insurance should be used "for the repair, replacement or rebuilding of said building, so damaged or destroyed." The trustees in bankruptcy contend that this language can only be satisfied by restoring the destroyed building in the condition in which it stood before the fire, and that to construct any other kind or size of building with the proceeds of the insurance would not satisfy the language of the deed, but would be to depart therefrom to their prejudice.

As stated hereinabove, we think this language must be construed so as to satisfy and accomplish the purpose made manifest by the other language of the deed, that the property should always be used for school purposes. The deed was executed in 1919, and the building was destroyed in 1922, or the early part of 1923. There is no evidence that the cost of constructing a building had materially changed during this interval, and it must, therefore, be conceded that the officers acting for the town of Tullahoma knew at the time the deed was prepared that a building, which the proof shows could not be constructed for less than $50,000, could not be constructed for $15,000.

If the terms of the deed had been strictly carried out by Clarke, by procuring a policy of insurance in the sum of $15,000, payable to himself, and he had collected this amount, we think he would have satisfied his obligation as evidenced by the deed, by the expenditure of this amount of money in a building suitable for school purposes on the property described in the deed. To replace does not necessarily mean to duplicate, and if the town of Tullahoma were seeking to enforce the contract against its vendee, it could not reasonably contend that the lan-

guage of the deed obligated the vendee to do more than to expend the sum realized from the insurance in the construction of such a building as that sum would be sufficient to construct, to replace the one destroyed. One of the meanings given to the word *replace* in the Standard Dictionary is "to put a substitute in place of; cause to supply the place of in any manner; as to replace butter with oleomargarin."

The preponderance of the evidence clearly indicates that salvage from the destroyed building, consisting of brick and stone, is available to a value of approximately $5,000. If the trustees in bankruptcy had protected the insurance, as it was no doubt their duty to do, there would be available for rebuilding a sum of approximately $20,-000. As it is, the net proceeds of the insurance, together with the salvage, will make possible the construction of a building costing well over $10,000. We think the town of Tullahoma has a clear right to require the expenditure of the insurance money for such a building, under the terms of the deed to Fitzgerald and Clarke, and if the building so constructed is less suitable for school purposes than the building destroyed by fire, the trustees in bankruptcy have no ground for complaint.

It appears from the record that the bill in this cause was filed on the very day the property was sold to the present holder under the deed of trust. If the trustees in bankruptcy had pursued a different course, and had let it be known that they would insist upon the expenditure of the insurance money on the property about to be sold, in accordance wtih the terms of the deed to Fitzgerald and Clarke, they would have received full protection, since the purchaser would have been able to make his bid on the assumption that he would receive the benefit of the insurance money.

For the reasons stated herein, we are wholly unable to find that the trustees in bankruptcy have established their right to recover the sum claimed, and the decree of the Court of Appeals dismissing their bill will be affirmed.